**In re NEWTON et al.**

**Patent Appeals No. 4270.**

Court of Customs and Patent Appeals.

May 29, 1940.

Roy W. Johns, of Philadelphia, Pa. (Norbert E. Birch, of Washington, D. C., of counsel), for appellant.

Howard S. Miller, of Washington, D. C., for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

HATFIELD, Associate Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the Primary Examiner rejecting all of the claims (Nos. 1 to 18, inclusive) in appellants' application for a patent for an alleged invention relating to a method of preparing margarine.

Appellants' method is sufficiently described in the appealed claims, of which claim 1 is illustrative of claims 4, 5, 6, 7, 9, 10, 11, 14, 15, and 16 and claim 3 is illustrative of claims 2, 8, 12, 13, 17, and 18.

Claims 1 and 3 read as follows:

"1. The method of preparing margarine which comprises melting an oil, adding milk and an ester of a polyhydric alcohol and a higher fatty acid characterized by at least one free alcoholic hydroxyl group in the polyhydric alcohol part of the ester, quickly cooling the oil to a temperature considerably below its congealing point, dispersing the water throughout the oil, and permitting the oil to crystallize out at a temperature not above its congealing point.

"3. The method of treating an emulsified shortening product which comprises supercooling the melted emulsion below its congealing point, adding a small percentage of an ester of a polyhydric alcohol and a higher fatty acid characterized by at least one free alcoholic hydroxyl group in the polyhydric alcohol part of the ester, agitating while the mixture *is supercooled and yet liquid* to secure a fine dispersion of the moisture content, and allowing the supercooled liquid to solidify." (Italics ours.)

The references relied upon by the Primary Examiner are as follows: Bollens et al., 1,911,222, May 30, 1933; Reynolds, 1,917,273, July 11, 1933; Harris, 1,985,496, December 25, 1934; Epstein et al., 2,006,-798, July 2, 1935; Bottoms et al., 2,013,025, September 3, 1935; Joyce, 2,024,647, December 17, 1935.

It will be observed that, among other things, claim 3 calls for the agitation of the supercooled mixture in its liquid state to secure a fine dispersion of the moisture content; whereas, although claim 1 calls for cooling the oil below its congealing point, it does not include the statement that the oil is in liquid form when the moisture content is dispersed therethrough.

The patents to Reynolds, Harris, and Epstein et al. were relied upon by the tribunals of the Patent Office as disclosing the use of the "monoglycerides," "diglycerides," and other esters, disclosed and claimed by appellants, in the manufacture of margarine. None of those references, however, discloses the step in appellants' process of supercooling either the oils or the mixture of oils and other margarine ingredients.

The Primary Examiner cited the patent to Bollens et al. as disclosing the supercooling of shortening agents, such as lard and "shortening compounds prepared by mixing oils with stearine, hydrogenized shortening from vegetable oils, etc.," and the patent to Bottoms et al. as disclosing the supercooling of non-culinary materials, such as waxes and soaps.

The patent to Joyce was relied upon by each of the tribunals of the Patent Office as disclosing the supercooling of oils in a process of manufacturing margarine, although Joyce does not disclose the emulsifying agents called for by the appealed claims.

In its decision affirming the decision of the Primary Examiner, the Board of Appeals stated, inter alia:

"The patent to Joyce relates to the manufacture of margarine *and is more analogous in respect to employment of cooling in this relation* but does not disclose the particular hydrophyllic materials named by applicants nearer than 'the usual derivatives of glycerin.'

"It is urged on behalf of applicants that the supercooling mentioned by Joyce is not comparable to the supercooling employed by applicants. It is contended that Joyce merely intends to congeal the margarine fats whereas applicants cool to some materially lower point. The supercooling is defined in applicants' specification as meaning 'a temperature of perhaps 15° or 20° below its (the fats) congealing point.' Joyce points out that vegetable oils and fats employed in margarine manufacture may have widely different melting points and suggests that the margerine base of his patent should have a melting point below 98° F. Joyce suggests mixing the hydrophyllic agents with the milk and salt bath before introducing the same [into the] *congealed* margerine base. Joyce also suggests alternative procedures as to order of mixing. The margarine base may be still liquid though supercooled when mixed and agitated with the milk bath—page 3, column 2, lines 17 to 22.

"It is considered that the patent to Joyce *discloses the principle involved in the claims on appeal.* The question is presented whether invention is involved in employing mono and diglycerides within the scope of Joyce's usual derivatives of glycerin as a hydrophyllic agent. In respect to the latter feature, it is our conclusion that since the mono and diglycerides have been used in what is considered an analogous relation by Epstein et al. and Reynolds in margarine processes and products, no new or unobvious result is secured by employing them specifically as the glycerides within Joyce's disclosure. This appears to be merely a simple case of substituting one reagent for another in analogous equivalent relation and without inventive results.

"In respect to the order of mixing and cooling Joyce anticipates supercooling the margarine base and then agitating in milk and salt and hydrophyllic composition. *It is our opinion that the term 'supercooling' applies to Joyce's disclosure in the same way as applicants' method.*

"Claims 17 and 18 appear broad as to the order of mixing and in respect to chilling. Claim 1 requires the margarine base to be mixed with the milk bath and then chilled. Claims 4, 5, 6, 9, 10, 11, 14, 15 and 16 reverse the order of steps as compared to claim 1. Claims 2, 3, 7, 8, 12 and 13 include no reference to the milk bath. After careful consideration of the terms of all of the claims, however, we are unable to find that any of them presents patentable matter particularly over the disclosure of Harris, Epstein et al. or Reynolds to disclose mono and diglycerides as hydrophyllic agents in view of Joyce *disclosing super-*

*cooling* of the margarine base and agitation with the milk bath with an equivalent hydrophyllic agent." (Italics not quoted.)

At the time of the oral arguments in this court, counsel for appellants conceded that, in the preparation of margarine, it is old to add to the oil the emulsifying agents specified in the appealed claims. It is contended by counsel, however, that, although the patent to Joyce shows a supercooling of the oils and fats used in the manufacture of margarine, the patentee does not use the term "supercooled" in his patent in the same sense that it is employed in the appealed claims; that the patentee Joyce uses the term "supercooled" in the sense that the oil, although congealed, is, as stated by the patentee, sufficiently liquid or fluid "to be agitated very thoroughly and to flow," whereas, the term "supercooled" in the appealed claims means that, although the liquid (consisting of oil, or a mixture of oil, milk, and an emulsifying agent) is supercooled to a temperature below its congealing point, it is removed from the cooling or chilling medium while in a liquid state and before it has become congealed; that, in appellants' process, after the supercooled liquid is removed from the chilling medium and before it has become congealed it is agitated to secure a fine dispersion of the moisture content, and then permitted to solidify; that the supercooling feature in appellants' method is of vital importance; and that by appellants' process a superior product is produced.

We think it is clear from the patent to Joyce that the supercooled oils and fats in his margarine base, although sufficiently liquid to permit flow and agitation, were congealed, and that the patentee did not contemplate removing his blend of oils and fats from the chilling medium and agitating it with other margarine ingredients while it was in the liquid state and before it became congealed.

The Primary Examiner relied on the patents to Bottoms et al. and Bollens et al., as well as the patent to Joyce, for a disclosure of the step of supercooling used by appellants.

The Board of Appeals stated in its decision, however, that the patent to Bollens et al. referred "to a supercooling step in treating lard and similar shortening materials"; that "These materials do not involve the step of hydrating used in connection with margarine since it is not desired

that these materials contain a high content of moisture to imitate butter"; that the Bottoms et al. patent employed "supercooling in connection with solidifying relatively anhydrous fatty materials"; and that there was no reference in that patent to "treating to an aqueous bath analogous to that involved in the appealed claims for treating margarine or supercooling in the same relation." The board accordingly held, as we understand its decision, that those patents were not proper references for the supercooling step in appellants' claims, the board stating in its decision that "It is our view that Bollens et al. and Bottoms et al. are not relevant to applicants' method."

In their application, appellants stated that the term "supercooling," as employed therein, "will be understood by reference to the heretofore mentioned U. S. Patent No. 1,911,222 [the reference patent to Bollens et al.]. In accordance with the teachings of that patent, the fat is supercooled to a temperature of perhaps 15° or 20° below its congealing point. The chilling is done very rapidly and the supercooled fat passes from contact with any chilling medium before any appreciable crystallization takes place."

Although the Board of Appeals held that the patent to Bollens et al. was not a proper reference in the instant case for the reasons set forth in the quoted excerpts from its decision, counsel for appellants relies upon that patent for an explanation of the meaning of the term "supercooling," or language equivalent thereto, as used in the appealed claims.

In view of the fact that the Board of Appeals held that the patents to Bollens et al. and Bottoms et al. were "not relevant to applicants' method," and as the patent to Joyce does not, in our opinion, either disclose or suggest the removal of his supercooled blend of oils and fats from the chilling medium and agitating it with other margarine ingredients while it is in a liquid state and before it has become congealed, as called for in appealed claims 2, 3, 8, 12, 13, 17, and 18, we are unable to concur in the conclusion reached by the board that those claims do not involve invention. However, as the other appealed claims do not contain the limitation that the supercooled oil or mixture is agitated to secure a fine dispersion of the moisture therein while the oil or mixture is in a *liquid* state, and, so far as appears from such claims, the supercooled oil or mixture

may be in the same *congealed* state as the supercooled oils in the Joyce disclosure, we are in agreement with the conclusion reached by the board that those claims are unpatentable over the references of record.

The board stated in its decision that "After careful consideration of the terms of all the claims," it was unable to hold that the appealed claims were patentable over the references of record. Accordingly, our affirmance of the board's decision as to claims 1, 4, 5, 6, 7, 9, 10, 11, 14, 15, and 16, on the ground that such claims do not contain the limitation that the supercooled oil or mixture is agitated or emulsified while the oil or mixture is in a liquid state, does not amount to a new ground of rejection of those claims.

The decision of the Board of Appeals is modified, being reversed as to claims 2, 3, 8, 12, 13, 17, and 18, and affirmed as to the other appealed claims.